BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
REX D. GARNER, ESQ.
Nevada Bar No. 9401
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
Email: rgarner@foxrothschild.com
*Counsel for Plaintiffs/Debtors*

Electronically Filed July 21, 2021

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>GYPSUM RESOURCES MATERIALS, LLC,<br><br>☐ Affects Gypsum Resources Materials, LLC<br>☐ Affects Gypsum Resources, LLC<br>☒ Affects all Debtors<br><br>Debtors. | Case No. BK-S-19-14796-mkn<br>Chapter 11<br><br>Jointly Administered with<br>Case No. BK-S-19-14799-mkn |
| GYPSUM RESOURCES, LLC, a Nevada limited liability company; and GYPSUM RESOURCES MATERIALS, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>REP-CLARK, LLC, a Colorado limited liability company; and Does 1 through 20, inclusive,<br><br>Defendants. | Adv Proceeding No. 19-01083-mkn<br><br>**MOTION TO STRIKE REP-CLARK'S EXPERT REPORT AND EXCLUDE TESTIMONY AND OPINIONS OF REP-CLARK'S EXPERT THOMAS P. ERWIN**<br><br>Hearing Date: September 1, 2021<br>Hearing Time: 9:30 a.m. |

1

Debtors/Plaintiffs Gypsum Resources, LLC ("GR") and Gypsum Resources Materials, LLC ("GRM") (together, "Plaintiffs"), by and through their counsel of record, Fox Rothschild, LLP, respectfully submit this motion (the "Motion") for entry of an order striking the expert report and excluding the testimony and opinions of Thomas P. Erwin, the disclosed expert witness of Defendant Rep-Clark, LLC ("Rep-Clark" or "Defendant"), pursuant to the Federal Rules of Evidence ("FRE"), Federal Rule of Civil Procedure ("FRCP") 26 (as made applicable to the above-captioned adversary proceeding (this "Adversary Proceeding") by Federal Rule of Bankruptcy Procedure ("FRBP") 7026) and related case law.

This Motion is made and based upon the following memorandum of points and authorities, the Declaration of Rex Garner (the "Garner Declaration") filed concurrently herewith, the papers and pleadings on file with the Court in the above-captioned jointly administered chapter 11 cases (the "Bankruptcy Case"), and any oral argument presented at the time of the hearing of this Motion.

Dated this 21st day of July 2021.

**FOX ROTHSCHILD LLP**

By    /s/ Rex D. Garner
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    REX D. GARNER, ESQ.
    Nevada Bar No. 9401
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135

*Counsel for Plaintiffs/Debtors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Courts admit expert testimony only if, among other things, the expert's knowledge, experience, or training will help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Accordingly, a lawyer who has no greater knowledge of the law than the judge, but who offers his opinion on interpretation of legal principles as opposed to facts, will *not* assist a court, and the lawyer-as-expert's opinions, therefore, are not admissible.

In this Adversary Proceeding, the Debtors seek a declaration from the Court on the legal interpretation of the Rep-Clark Transaction, which involves not a true lease but actually disguised financing. To combat the Adversary complaint, Rep-Clark hired a lawyer, Thomas P. Erwin, with mining lease experience to proffer an expert report/opinion on whether the Purported Mining Lease at issue here legally qualifies as a mining lease. Mr. Erwin's report should be stricken and his testimony excluded because Mr. Erwin's opinions and conclusions as to the nature of the Purported Lease impermissibly usurp the Court's role as exclusive decider of the recharacterization factors under prevailing law.

As Mr. Erwin's legal conclusions and opinions would not be helpful to the Court as it determines whether the Purported Lease is a true lease or part of a disguised financing transaction, the Erwin Report and any potential testimony from him should be stricken and excluded in this Adversary Proceeding.

## II. FACTUAL BACKGROUND

Plaintiffs have filed or will be filing contemporaneously with this motion a summary judgment motion on the Adversary complaint, along with a separate statement of material facts. Plaintiffs adopt and incorporate by reference the facts set forth therein, and include only a summary of the facts as relevant to this motion to strike.

In February 2018 Plaintiffs and Defendant executed a "Gypsum Reserves Agreement and Joint Escrow Agreement" (as amended, the "Reserves Agreement"). As part of this transaction (the "Rep-Clark Transaction"), Defendant purchased title to mineral rights from GR and immediately "leased" them to GRM to mine in exchange for regular royalty payments calculated at a per ton rate,

1

which payments must be made irrespective of the mining operations and sales.

On August 9, 2019, Plaintiffs filed a complaint (the "Complaint"), which commenced this Adversary Proceeding.

### III.    OVERVIEW OF OPINION AND RELATED TESTIMONY

#### A.    Mr. Erwin's Report

Defendant disclosed Thomas P. Erwin as their proffered expert witness and a report (the "Erwin Report"), which is attached to the Garner Declaration as **Exhibit 1**.

The Erwin Report states that Mr. Erwin is, among other things, an attorney and a partner of the law firm Erwin Thompson Faillers in Reno, Nevada. *Id.* at p. 2, Attach.1 pg. 1.  As references, the Erwin Report relied on parts of the Nevada Constitution, certain sections of the Nevada Revised Statutes, two Nevada Supreme Court opinions, and a section of a lease handbook.  The Erwin Report annexed six attachments: (1) Curriculum Vitae Thomas. P. Erwin; (2) Constitution of the State of Nevada, Article 10, Section 5; (3) Nevada Revised Statutes 362.010, 362.090, 362.140(1) and 362.140(3); (4) G. Reeves Mining Lease Handbook, Rocky Mineral Law Foundation (1992); (5) *Koyen v. Lincoln Mines, Inc.*, 63 Nev. 325, 171 P.2d 364 (1946); and (6) *Waters v. Stevenson*, 13 Nev. 157 (1878).

The Erwin Report's opinions immediately begin with a legal conclusion about the allegations contained in the Adversary Complaint and blesses the Purported Lease as a true lease by stating, "The assertion in Paragraph 1 of the Complaint that the Mining Lease does not resemble a lease by any definition or concept of that term is plainly wrong." Ex. 1 at p. 4.

The Erwin Report continues to come to conclusions that are generally left to courts and fact-finders to make, such as when, after summarizing certain sections of the Purported Lease and their stated function within the document, the Erwin Report states, "These elements are more indicative of a mining lease designed for an operating mine than an instrument to secure indebtedness." *Id.* at p. 5. Similarly, when faced with facts that show that the Purported Lease is not a true lease, the Erwin Report makes the following legal conclusion: "The [Purported Lease] terms which require [Plaintiffs] to pay production royalties and which provide that under certain circumstances ownership of the Mining Claims will be transferred to Grantor [i.e., Plaintiffs] do not negate the express terms of the

[Purported Lease] which establish the landlord-tenant relationship." *Id*. Statements such as the foregoing demonstrate that the Erwin Report is drawing conclusions that should be, in this case, left to the judgment of the Court.

### B. Mr. Erwin's Deposition Testimony

Plaintiffs took Mr. Erwin's deposition on June 16, 2021, a transcript of which (the "Deposition") is attached to the Garner Declaration as **Exhibit 2**. During the Deposition, Mr. Erwin confirmed and reiterated his credentials as an attorney experienced in issues of mining law and leases in Nevada, as well as the scope of his retention and the materials he relied upon in drafting his report. Ex. 2 at 4:20–8:25.

## ARGUMENT

Mr. Erwin, through his Report and related testimony at the Deposition, opines on the law and proffers legal conclusions about the validity of the Purported Lease, therefore impermissibly usurping the authority of the Court. Whether the Purported Lease and the related transactions created a true landlord-tenant relationship or whether the Purported Lease and related transactions were in fact a disguised financing arrangement is *the* issue in this case. This question requires an analysis of the contracts at issue in light of the many factors courts traditionally employ in determining whether a lease is a true lease or something else. This legal analysis falls squarely within the province of the Court. As such, the Erwin Report and Mr. Erwin's related testimony should be stricken and excluded.

### A. Expert witness legal standards.

Federal Rule of Evidence 702 permits expert testimony *if* "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). FRE 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Thus, while testimony on an ultimate issues in a case is not "per se improper[,] ... **an expert witness cannot give an opinion as to her legal conclusions, i.e., an opinion on an ultimate issue of law.**" *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citing *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (overruled on other grounds by *U.S. v. Bacon*, 979 F.3d 766 (9th Cir. 2020)). Such opinions do not aid the trier of fact in making a decision, but, instead, attempt to substitute an expert's

3

judgment for that of the jury's. *Krause v. Cty. of Mohave*, 459 F. Supp. 3d 1258, 1264 (D. Ariz. 2020) (citing *Mukhtar* at 1066 n. 10).

### B. Mr. Erwin's Testimony Is Inadmissible Because An Expert May Not Give Opinions On Either The Law Or Application Of The Law To The Facts Of A Case.

As discussed above, it is axiomatic that expert testimony on matters of law is improper. *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996); *In re Stratosphere Corp. Sec. Litig.*, 66 Supp. 2d 1182, 1191 (D. Nev. 1999) ("The province of expert opinions lies within the analysis of factual issues, not legal ones."). Experts should attempt to "interpret and analyze factual evidence … not testify about the law." *Racicot*, 87 F.3d at 1045 (internal citation omitted). Therefore, courts routinely exclude expert opinions regarding both what the applicable law is and how that law applies to the facts of a case. *See, e.g.*, *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042–43 (D. Ariz. 2005) ("Consistent with the foregoing opinions, the Ninth Circuit has also excluded legal expert testimony concerning both what the law is and how it should be applied to the facts of a case.").

The Erwin Report either recites the law or uses primary and secondary sources to apply the law to the Purported Lease and make legal conclusions about the ultimate issue in this action for a declaratory judgment: whether the Purported Lease is a true lease or a disguised financing arrangement. The Erwin Report attempts to instruct the Court and usurp its role in determining the validity of the allegations in the Complaint.

For example (and in addition to the examples already discussed above), after summarizing section 1.1 of the Purported Lease (which recites the rights and privileges of Plaintiffs as "lessees") the Erwin Report states, "This broad grant of rights and privileges is consistent with the rights afforded a lessee under a mining leases." Ex. 1 at p. 4. As support for the foregoing conclusion, the Erwin Report cites *Waters v. Stevenson*, an 1878 Nevada Supreme Court opinion. The very fact that the Erwin report is relying on primary source case law for support of his opinions is demonstrative of a **legal opinion**—one which is impermissible to give as an "expert" witness. The Court is not aided or helped in its work, nor does this assist in discerning the economic realities of this transaction and whether the Purported Lease is a part of disguised financing.

Similarly, in an effort to show that certain tax obligations under the Purported Lease, which were to be paid by Plaintiffs as lessees, are often negotiable and sometimes nominal, the Erwin Report cites to several sections of the Nevada Revised Statutes and the 1946 case of *Koyen v. Lincoln Mines, Inc*. Undoubtedly this is further indication of Mr. Erwin's **legal opinion** and not something that is helpful to the Court. The Court is fully competent to analyze the statutes of Nevada and state law issues that come before it. The concepts contained in the Erwin Report are more fitting for a memorandum of law than an expert report. As such, the Erwin Report should be stricken and excluded because it contains legal opinions that improperly intrude on the province of the Court.

During the Deposition, Mr. Erwin also offered conflicting legal opinions. At certain times, Mr. Erwin testified that he could conclude that the Purported Lease was a true lease based solely on the four corners of the document:

> Q. If we go to the next paragraph five on page 6 you say that the fact that RCL, who is Rep-Clark, purchased the mining claims with the intent to lease them under the mining lease is extrinsic to the express terms of the mining lease, which are typical of mining leases in Nevada. What do you mean by extrinsic?
>
> A. The mining lease terms are contained in the document itself, it's an integrated document. The motivation or goals of the parties outside that lease are not reflected in that lease. I have not been privy and I wasn't privy to any conversations among the parties or internally why or how they structured these transactions the way they did. What I'm saying is look, we have this mining lease, it's a comprehensive agreement, that's the mining lease and the reasons the mining lease was entered or these other transactions were entered are not reflected there and they don't -- and those reasons don't alter the expressed terms of the mining lease itself.

Ex. 2 at 33:19–34:13. However, at other times Mr. Erwin conceded that the larger transaction, where the Reserves Agreement was taken into account, was relevant and unusual:

> Q. What you are saying is the fact that Rep-Clark purchased these claims with the intent to lease them to Gypsum, GRM, doesn't affect your opinion that if you are just looking at the four corners of all the pages of the mining lease that it contains terms typical of leases in Nevada?
>
> A. Yes. I have had other situations where a company bought some claims with the expressed intent of leasing them to a party they had already identified.
>
> Q. It sounds like we would agree that this lease that we are talking about is one component piece of a larger transaction?
>
> A. The recitals of the lease, mining lease agreement itself refers to the Gypsum Reserves Agreement and Joint Escrow Instructions so it's very clear that the mining lease was one transaction among others executed at or about the same time.

5

> Q. You reviewed as we looked at on page 3 of your report the Gypsum Reserves Agreement and Joint Escrow Instructions from February 8, 2018, correct?
>
> A. Yes.
>
> Q. And that document itself had a handful of exhibits that include the mining lease that you examined as well, correct?
>
> A. Yes.
>
> Q. Have you in your experience ever seen a transaction like this one before?
>
> A. No, this is different. I have seen transactions with some of these components, not exactly these types of agreements, but I don't recall a single transaction among my clients and other parties that was constructed exactly like this.

*Id*. at 34:14–35:20.

While Mr. Erwin concluded that the Purported Lease was a true lease, he also conceded (as in the exchange above) that the Purported Lease and the general transaction between Plaintiffs and Defendant was unique and not one with which he had familiarity from his career:

> Q. I understand a lot of your practice deals with unpatented mining claims where it exist on federal lands, but for those where the lessor like in this instance Rep-Clark owns the mineral estate and leases it to someone like GRM or some other operator, how typical is it in your experience that the title to that mineral estate will return to the original grantor?
>
> A. This transaction is a bit different because it's a sale and a leaseback. I have seen a few of those in my career. I can't remember the details of those transactions. **That distinguishes it from the normal case of a mining lease.** We have a sale here and then we have a mining lease and a return of the property the surface rights are going to a third party. It's really difficult to put this into a common transaction or mining lease in that respect and that goes back to this issue we have got the severed estate, we have potential real estate aspect. There may be some value to the surface for non-mining purposes. I don't know if that answers your question.
>
> Q. I think it does. Let me ask a related question …[certain material related to technical and audio-visual issues omitted]…do you understand that there is a provision in this lease that upon default Rep-Clark has the option to replace the mine operator?
>
> A. I saw that, yes.
>
> Q. And that even under that option once a sufficient amount of tonnage has been mined and royalties paid, the mineral estate still returns to the original owner, is that how you understand the lease as well?
>
> A. Yes, it goes back to the [grantor] party.
>
> Q. Have you ever seen a default provision like that in any of the leases that you've been involved with?

6

A.  I'm trying to think.  This would be a case where the lessee completes the production commitment and the property title of the lessor owner then goes to the third party, **I'm not sure I can say that I've ever seen one with this triangular relationship** of mineral estate owner lessor, mineral estate lessee with the provisions that the mineral estate goes to the third-party surface owner.

*Id*. at 19:8–21:12 (emphases added).

These excerpts reveal many conclusory statements about the legal nature of the Purported Lease, which are in the exclusive province of the Court, and even then Mr. Erwin concedes that this Rep-Clark Transaction is unique in his experiences.

Finally, during the Deposition, Mr. Erwin conceded that, in the end, only the Court can decide if the Purported Lease is a true lease and that his opinions were legal in nature:

Q.  Would you agree whether this lease qualifies as such is a legal question?

A.  Ask the question again.

Q.  Yes.  Would you agree whether this lease qualifies as a lease is a legal question?

A.  You cut out again.  Are you asking me the question of whether this lease is a legal question?

Q.  Right.  Whether this lease qualifies as such is a legal question?

A.  That's my understanding of the law.  It's the province of the court to determine the nature and characteristics of the agreement and enforcement of its terms.

Q.  Whether or not this lease qualifies as a lease or disguised financing as is alleged in the complaint, would you agree that that would require an analysis of the entire transaction and not just the lease in isolation?

A.  Can you repeat the question, I want to make sure I understand what you are asking.

Q.  Would you agree that whether or not that qualifies as a lease or as disguised financing as the complaint alleges would require an analysis of the entire transaction and not just the lease in isolation?

A.  I don't know if I can answer that because that again is a question for the judge.  I'm not a bankruptcy lawyer.  I have a basic understanding of some principals of bankruptcy law.  I know that executory contracts such as leases are subject to special provisions of the bankruptcy code that may not apply to other types of property or assets.  As far as what I would say is a multicomponent transaction like this and how they work together and the court would apply the bankruptcy code, I'm really not qualified to give an opinion on that.

*Id.* at 48:18–50:2.

## IV. CONCLUSION

The Erwin Report and Mr. Erwin's related testimony should be stricken and excluded for the reasons set forth above. The Erwin Report and Mr. Erwin's related testimony impermissibly opine on the law and apply the law to the facts, thereby usurping the role of the Court. Therefore, the Erwin Report and related testimony are inadmissible. Plaintiffs respectfully request that this Court enter an Order: (i) striking the Erwin Report; (ii) excluding the testimony of Mr. Erwin; and (iii) granting such further relief as the Court deems just and proper.

Dated this 21st day of July 2021.

**FOX ROTHSCHILD LLP**

By  /s/ Rex D. Garner
  BRETT A. AXELROD, ESQ.
  Nevada Bar No. 5859
  REX D. GARNER, ESQ.
  Nevada Bar No. 9401
  1980 Festival Plaza Drive, Suite 700
  Las Vegas, Nevada 89135

*Counsel for Plaintiffs/Debtors*

124507565.1

8