Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
November 08, 2021

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

In re:

GYPSUM RESOURCES MATERIALS, LLC,

☐ Affects Gypsum Resources Materials, LLC
☐ Affects Gypsum Resources, LLC
☒ Affects All Debtors

Debtors.

Case No.: 19-14796-MKN
Chapter 11

Jointly Administered with
Case No.: 19-14799-MKN

GYPSUM RESOURCES, LLC, a Nevada limited liability company; and GYPSUM RESOURCES MATERIALS, LLC, a Nevada limited liability company,

Plaintiffs,

vs.

REP-CLARK, LLC, a Colorado limited liability company,

Defendant.

Adv. Proc. No. 19-01083-MKN

Date: September 16, 2021
Time: 9:30 p.m.

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO STRIKE[1]**

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court. All references of "AECF No." are to the documents filed in the above-captioned adversary proceeding. All references to "Section" or "§§ 101-1532" are to the provisions of the Bankruptcy Code. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All references to "Civil Rule" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence.

On September 16, 2021, the court held a hearing on three matters: (1) Debtors' Motion for Summary Judgment on Their Adversary Complaint Against Rep-Clark, LLC ("Debtors SJ Motion"); (2) the Motion for Summary Judgment brought by defendant Rep-Clark, LLC ("Defendant SJ Motion"); and (3) the Motion to Strike Rep-Clark's Expert Report and Exclude Testimony and Opinions of Rep-Clark's Expert Thomas P. Erwin ("Strike Motion"). The appearances of counsel were noted on the record. After arguments were presented, the matters were taken under submission.

**BACKGROUND**

On July 26, 2019, Debtors[2] filed a voluntary Chapter 11 petition in this bankruptcy court. (ECF No. 1).[3]

On August 9, 2019, Debtors filed a complaint commencing the above-captioned adversary proceeding ("Adversary Complaint"). (AECF No. 1). The Complaint alleges a single claim seeking declaratory relief with respect to a certain "Mining Lease Agreement" executed on or about February 12, 2018, between the Debtors and defendant Rep-Clark, LLC ("Defendant"). Debtors seek a judgment declaring the Mining Lease Agreement to reflect a secured financing transaction between the Debtors and the Defendant, rather than a true lease.[4]

---

[2] A related Chapter 11 proceeding was commenced by Gypsum Resources Materials, LLC, denominated Case No. 19-14796-MKN. The two cases are jointly administered but not substantively consolidated. In this Order, Gypsum Resources, LLC and Gypsum Resources Materials, LLC, are referred to jointly as the "Debtors."

[3] As of the date of the hearing, Debtors had filed a proposed amended Chapter 11 plan of reorganization ("Proposed Plan") that addresses, *inter alia*, the claims of the defendant in this adversary proceeding. (ECF No. 1662). On October 21, 2021, an order was entered scheduling a plan confirmation hearing to commence on December 13, 2021 ("Plan Scheduling Order"). (ECF No. 1685).

[4] In the event that the Mining Lease Agreement is an unexpired lease or executory contract, Section 365 provides different rights and responsibilities, including the ability of a debtor in possession to reject such a lease or executory contract. A rejection essentially relieves a debtor in possession from future performance but still requires the payment of rejection damages as a pre-bankruptcy unsecured claim. In the event the Mining Lease Agreement is part of a secured financing transaction, Section 506 will govern the allowance of secured and unsecured claims, and Section 1129 will govern the treatment of such secured and unsecured claims in a proposed Chapter 11 plan. Section 1111(b) permits certain creditors having secured

On November 8, 2019, Defendant filed an answer to the Complaint. (AECF No. 22).

On July 21, 2021, Debtors filed their Strike Motion, along with the supporting declaration of their counsel. (AECF Nos. 126 and 127). The Strike Motion was noticed to be heard on September 1, 2021. (AECF No. 128).

On July 22, 2021, the Debtors SJ Motion was filed, accompanied by a Statement of Material and Undisputed Facts ("Debtors SUF").[5] (AECF Nos. 130 and 131). The Debtors SJ Motion was noticed to be heard on September 16, 2021. (AECF No. 132).

On July 23, 2021, the Defendant SJ Motion was filed, along with a supporting declaration ("Levkulich Declaration") and separate statement of undisputed facts ("Defendant SUF").[6] (AECF Nos. 134, 136, 137, 138, 139, 140, and 141). This motion also was noticed to be heard on September 16, 2021. (AECF No. 135).[7]

On August 9, 2021, an order was entered approving a stipulation scheduling a trial in this adversary proceeding for November 29 and 30, 2021, with a pretrial conference to be held on

---

and unsecured claims to elect specific treatment of their claims as long as the election is made by a specific deadline.

[5] Attached to Debtors SUF are copies of eight separate exhibits ("Debtors Ex. No."), of which No. 1 consists of the Declaration of James M. Rhodes ("Rhodes Declaration"). Defendant does not object to the authenticity or admission of Debtors' exhibits.

[6] Accompanying the Defendant SUF are twenty separate exhibits ("Defendant Exhibit No."). Defendant intentionally skipped using exhibit Nos. 16, 18, 19, and 20. Debtors do not object to the authenticity or admission of Defendant's exhibits.

[7] Many of the exhibits submitted by the Debtors and the Defendant appear to be the same. Debtors Ex. No. 3 consists of a copy of a Gypsum Reserves Agreement and Joint Escrow Instructions ("Reserves Agreement") to which is attached a list of exhibits as well as undated, unsigned copies of the referenced exhibits. Included in those undated, unsigned copies are, *inter alia*, a certain Mining Claims Grant Bargain and Sale Deed and Deed of Trust ("Mining Deed"), a Grant of Easement, a Land Royalty Agreement ("Royalty Agreement"), a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, and the subject Mining Lease Agreement. Defendant Ex. No. 1 consists of a signed copy of the Reserves Agreement entered on February 8, 2018. Defendant Ex. No. 15 consists of a signed copy of the Royalty Agreement entered on February 12, 2018. Defendant Ex. No. 2 consists of a signed copy of the Mining Lease entered on February 12, 2018.

November 10, 2021 ("Scheduling Order"). (AECF Nos. 144 and 145). The Scheduling Order also set deadlines for trial statements, motions in limine, and related matters.

On August 12, 2021, Defendant filed an opposition to the Debtor SJ Motion accompanied by an additional declaration ("Second Levkulich Declaration"), as well as an opposition to Debtors SUF. (AECF Nos. 150, 151, and 152).[8]

On August 13, 2021, Debtors filed an opposition to the Defendant SJ Motion. (AECF No. 154).

On August 18, 2021, Defendant filed an opposition to the Strike Motion. (AECF No. 155).

On August 25, 2021, Debtors filed a reply in support of their Strike Motion. (AECF No. 161).

On August 26, 2021, Debtors filed a reply in support of the Debtors SJ Motion. (AECF No. 162).

On August 27, 2021, Defendant filed a reply in support of the Defendant SJ Motion. (AECF No. 163).

---

[8] In addition to these items, Debtors Ex. Nos. 2, 4, 5, 6, 7, and 8 consist of a transcript of a deposition taken of Byron Levkulich on June 17, 2021 ("Levkulich Depo"), an amendment to the Reserves Agreement dated August 8, 2018 ("Reserves Amendment"), a second amendment to the Reserves Agreement dated October 31, 2018 ("Second Reserves Amendment"), certain correspondence between the parties dated May 2, 2019, additional correspondence between the parties dated May 24, 2019, and certain email exchanges between May 8, 2017 and May 11, 2017 ("May 11 Email"). Defendant Ex. Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21, 22, 23, and 24, consist of a transcript of the deposition of James Rhodes taken on June 29, 2021 ("Rhodes Depo"), the same Levkulich Depo, correspondence between the Debtors and Resource Land Holdings dated June 12, 2017, a March 16, 2017 email exchange ("March 16 Email"), an email exchange between March 22, 2017 and March 28, 2017, an April 25, 2017 email, a May 3, 2017 email, an email exchange between May 8, 2017 and May 10, 2017 email ("May 10 Email"), Debtors response and objections to Rep-Clarks First Set of Interrogatories ("Debtors Rog Response"), a July 19, 2017 email exchange, another copy of the May 11 Email, correspondence from Thomas P. Erwin dated March 24, 2021 along with attachments, a report from John C. Lacy dated April 13, 2021, a transcript of the deposition of Tom Erwin taken on June 16, 2021 ("Erwin Depo"), and a transcript of the deposition of John C. Lacy taken on June 10, 2021 ("Lacy Depo"). Defendant Ex. Nos. 6 and 14 appear to be copies of the same March 16 Email.

On September 1, 2021, the hearing on the Strike Motion was continued to September 16, 2021, to be heard along with the summary judgment motions.

On September 16, 2021, all three matters were heard and taken under submission. This order addresses all three motions.

**SUMMARY JUDGMENT STANDARDS**

A motion for summary judgment is governed by Civil Rule 56 which is applicable in this adversary proceeding under Bankruptcy Rule 7056. See Silva v. Smith's Pac. Shrimp, Inc. (In re Silva), 190 B.R. 889, 891 (B.A.P. 9th Cir. 1995). Under Civil Rule 56(a), summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). For summary judgment purposes "[m]aterial facts are those that may affect the outcome of the case." Farmer v. Las Vegas Metro. Police Dep't, 423 F. Supp.3d 1008, 1013 (D. Nev. 2019), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985). Findings of fact may not be entered because summary judgment may only be granted where there are no disputed issues of fact. See Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 989-90 (9th Cir. 2016).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party's evidence is judged by the same standard of proof applicable at trial. See Celotex Corp. v. Catrett, 477 U.S. 316, 323 (1986); see also Southern Calif. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). The burden of proof is on the party seeking the summary judgment, but the inferences are viewed in favor of the opposing party. See Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992); see also Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). Determinations of intent or credibility generally are ill-suited for disposition by summary judgment. See Fogel Legware, etc. v. Wills (In re Wills), 243 B.R. 58, 65 (B.A.P. 9th Cir. 1999). Once the moving party demonstrates the absence of disputed material facts, the responding party must provide admissible evidence raising a genuine dispute. The responding party cannot rely solely on conclusory allegations unsupported by factual data. See Farmer v.

Las Vegas Metro. Police Dep't, 423 F. Supp.3d at 1014 ("the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data [. . .] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.") (external citations omitted).

**THE RECORD PRESENTED**

The record consists of the written testimony set forth in the Rhodes Declaration, Levkulich Declaration, and Second Levkulich Declaration. It also consists of excerpts from the transcripts of various depositions of certain party representatives and witnesses, including the Levkulich Depo, Rhodes Depo, Erwin Depo, and Lacy Depo. Certain responses to discovery by the Debtors, e.g., in Debtors Rog Response, are verified by the Debtors' principal.

The record also consists of various non-testimonial documents that contain statements and representations that may be attributable to representatives of the parties as well as others. Copies of various transactional documents executed by or on behalf of the parties also are included, in particular the Mining Lease Agreement and other papers, documents and agreements. The court has not been requested to take judicial notice of any other matters outside the materials submitted by counsel.[9]

**DISCUSSION**

By their motion, Debtors seek summary judgment declaring "that the purported mining lease be recharacterized as secured financing and thus not subject to election under Section 365(d)." Debtors SJ Motion at 8:17-19.[10] By its motion, Defendant seeks summary judgment

---

[9] Pursuant to FRE 201(b), judicial notice may be taken of any materials appearing on the docket of the Chapter 11 proceedings as well as the instant adversary proceeding. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Lawson v. Klondex Mines Ltd., 2020 WL 1557468, at *5 (D. Nev. March 31, 2020); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015). At this time, it is unnecessary to do so in connection with this adversary proceeding.

[10] The parties have agreed that the deadline for Defendant to make its election under Section 1111(b), if at all, expires ten days after entry of the instant order.

declaring that the parties' transaction was "a sale of mineral rights with a leaseback [and]…was not a disguised financing agreement." Defendant SJ Motion at 2:17-18.

In seeking to recharacterize the Mining Lease Agreement as a secured financing transaction, Debtors also rely on the terms of other documents, particularly the Reserves Agreement, and the various other documents and agreements attached to the Reserves Agreement, e.g., the Mining Deed, the Royalty Agreement, the Reserves Amendment, and Second Reserves Amendment. See Complaint at ¶¶ 12, 12a, 12c, 16, and 18. Interestingly, Debtors argue that there are no ambiguities in these documents while also arguing that the Mining Lease Agreement itself should be "recharacterized." Equally interesting, Defendant argues that ambiguities exist in the documents that require consideration of parol evidence to confirm the labels given to the documents. In other words, the party asserting that there are no ambiguities seeks to recharacterize the subject document, while the party asserting that there are ambiguities seeks to retain the subject document.[11] As observed by others, this appears to give the word "ambiguous" more than one meaning.

The Mining Lease Agreement, Reserves Agreement, and Royalty Agreement are all governed by Nevada law. See Mining Lease Agreement at Art. VII, §7.4(a); Reserves Agreement at §15.3; Royalty Agreement at §8. All three documents contain an integration clause. See Mining Lease Agreement at Art. VII, §7.8[12]; Reserves Agreement at §15.4[13];

---

[11] It may be that Debtors believe the language and requirements of the Mining Lease Agreement and Reserves Agreement are unambiguous but that recharacterization of the related agreements together is appropriate. By contrast, Defendant also may believe that the language and requirements of the Mining Lease and Reserves Agreement are unambiguous but that any unstated intention of the parties is ambiguous. Fortunately, neither side goes so far as to suggest that ambiguity is present simply because they disagree over its meaning. Compare Dewsnup v. Timm, 502 U.S. 410, 432-33 (1992) (Scalia, J., dissenting) (rejecting premise of the majority that ambiguity exists in Section 506(d) simply because the litigants take contrasting positions over its meaning, which "makes every litigated statute ambiguous.").

[12] The integration language of the Mining Lease Agreement specifies in pertinent part that "This Lease contains all of the representations and agreements between the parties with respect to the Reserves and the subject matter hereof, and supersedes any and all prior agreements or understandings, whether oral or written…" (Emphasis added.)

Royalty Agreement at §9.[14] All three documents are signed by one or both: Michael Rhodes as manager of Gypsum Resources Materials, LLC, or by James M. Rhodes as president of Truckee Springs Holdings, Inc., which is the manager of Gypsum Resources I, LLC.

Outside of bankruptcy, Debtors' request arguably seeks reformation of the Mining Lease Agreement to reflect what it allegedly wanted to achieve: to obtain an extension of credit from the Defendant secured by an interest in property. Under Nevada law, the party seeking reformation of an agreement has the burden of proving a mutual mistake of fact warranting a modification to reflect the true intentions of the parties. See Realty Holdings, Inc. v. Nevada Equities, Inc., 633 P.2d 1222, 1224 (Nev. 1981)("A party must show what the actual agreement of the parties was in order to be entitled to reformation."); Seyden v. Frade, 494 P.2d 1281, 1283-84 (Nev. 1972)("The courts in this state will reform contracts and deeds in accordance with the true intention of the parties when their intentions have been frustrated by mutual mistake.").[15] See also Tropicana Pizza, Inc. v. Advo, Inc., 238 P.3d 861 (Nev. 2008) (where one party makes a

---

[13] The integration language of the Reserves Agreement specifies in pertinent part that "This Agreement and the Closing Documents, including the exhibits attached hereto and thereto, constitute the entire agreement between Buyer and Seller Parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, letters of intent, negotiations and discussions, whether oral or written, of the parties…" (Emphasis added.) The "Closing Documents" include, *inter alia*, the Mining Lease Agreement and Royalty Agreement. See Reserves Agreement at §5.2.

[14] The integration language of the Royalty Agreement specifies that "This Agreement, the Master Reserve Agreement, and the Closing Documents, including the exhibits attached to each of the foregoing, constitute the entire agreement between Grantee and Grantor and Lessee pertaining to the subject matter of these agreements. There are no warranties, representations or other agreements, express or implied, made to either party by the other party in connection with the subject matter hereof except as specifically set forth herein or in the other documents referenced in this Section or delivered in connection herewith or therewith." (Emphasis added.)

[15] Compare generally Cigna Corp. v. Amara, 131 S.Ct. 1866, 1879 (2011) ("The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud."); Skinner v. Northrop Grumman Retirement Plan B, 673 F.3d 1162, 1166 (9th Cir. 2012) ("In the law of contract, a court may reform a contract to reflect the true intent of the parties if both parties were mistaken about the content or effect of the contract…The court may reform the contract to capture the terms upon which the parties had a meeting of the minds.").

unilateral mistake and the other party knows, but fails to bring it to the other party's attention, the court has discretion to reform the contract to reflect the belief of the mistaken party, or, to permit rescission of the contract).

Inside of bankruptcy, Debtors' request seeks "recharacterization" of the Mining Lease Agreement as a secured financing transaction giving rise to a secured claim allowed under Section 506(a),[16] rather than an executory contract or unexpired lease governed by Section 365.[17] Secured claims and unexpired leases may be treated differently in Chapter 11 plans. See generally 7 COLLIER ON BANKRUPTCY, ¶¶ 1123.02[1] and 1123.02[2] (Richard Levin and Henry J. Sommer, eds., 16th ed. 2021). By denying the allegations and prayer of the Adversary Complaint, Defendant prefers that the Mining Lease Agreement be treated as an unexpired lease during the Chapter 11 proceeding and in any proposed plan of reorganization. Both sides agree that recharacterization of a pre-bankruptcy transaction is permitted by the Ninth Circuit's decision in City of San Francisco Market Corp. v. Walsh (In re Moreggia Sons, Inc.), 852 F.2d

---

[16] Under Section 506(a), secured claims generally are allowed as secured in the amount of the value of the creditor's collateral, with the amount of the claim exceeding the value of the collateral allowed as unsecured. Generally, secured and unsecured claims must be classified separately in a proposed Chapter 11 plan, see 11 U.S.C. §1122(a), and must be treated differently in any proposed plan. See 11 U.S.C. §1123(a)(1).

[17] Under Section 365(a), a Chapter 11 debtor in possession may, with court approval, assume or reject any executory contract or unexpired lease of the debtor. In approving a decision to assume or reject an executory contract or unexpired lease in Chapter 11, the bankruptcy court typically gives deference to the business judgment of management. See Mission Product Holdings, Inc. v. Tempnology, LLC, 139 S.Ct. 1652, 1658 (2019). Until a management decision is made, specific obligations are imposed by Sections 365(d)(3) and 365(d)(4) with respect to unexpired leases of nonresidential real property. In particular, Section 365(d)(4) requires management to make the decision within 60 days after the case is commenced or such additional time permitted by the court. Moreover, if the decision is not made before the deadline, the debtor in possession must surrender the property to the lessor. Under Section 365(g)(1), the rejection of an executory contract or unexpired lease of property constitutes a breach of the contract or lease immediately before the date of the filing of the bankruptcy petition. Under Section 502(g)(1), a claim arising from the rejection of an executory contract or unexpired lease is determined and allowed as if the claim had arisen before the date of filing the bankruptcy petition. Rejection of an executory contract or unexpired lease, however, does not result in a rescission or termination of such contract or lease. See Mission Product Holdings, 139 S.Ct. at 1661.

1179 (9th Cir. 1988), but they disagree on whether recharacterization is appropriate in the instant matter.[18] Until the recharacterization dispute is resolved, the deadline to assume or reject the Mining Lease Agreement under Section 365(d)(4), see note 17, supra, effectively may or may not have been extended.

In Moreggia, the circuit panel took its cue from the legislative history of Section 502(b)(6) that limits the amount of damages awarded for terminating an unexpired lease of real property. 852 F.2d at 1182. That history included a legislative observation that "Whether a 'lease' is [a] true or bona fide lease or, in the alternative, a financing 'lease' or a lease intended as security, depends on the circumstances of each case." Id., quoting S.Rep. No. 989, 95th Cong., 2d Sess. 64, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5850. The circuit panel then applied that conclusion to Sections 365(d)(3) and 365(d)(4), citing In re PCH Associates, 804 F.2d 193, 199 (2nd Cir. 1986). Id. Before examining whether recharacterization was appropriate under the facts before it, the Moreggia panel then cited the Ninth Circuit's prior decision in Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.), 780 F.2d 1482 (9th Cir. 1986). In Pacific Express, a different circuit panel affirmed the bankruptcy court's conclusion that an equipment lease was actually a sale transaction that was subject to avoidance under Section 544 rather than treatment under Section 365(d)(2). Id. at 1486.

In examining whether recharacterization was appropriate, the Moreggia panel observed that "based on the circumstances giving rise to the agreement, the substantive provisions of the Lease, and the Congressional purposes underlying section 365, the bankruptcy court did not error in concluding that the Lease is not a species of property governed by the assumption-rejection

[18] The pre-bankruptcy document at issue in Moreggia was labeled by the parties as a "Lease" but the parties apparently agreed that words in the document such as "landlord, lease and rent" were not "reflective of the true nature of the Agreement." 852 F.2d at 1180 n.1. At the outset, it is worth noting that there is no similar agreement between the Debtors and the Defendant in the instant matter. In other words, there is no threshold agreement by the Debtors and the Defendant that the Mining Lease Agreement should be recharacterized at all.

provisions of section 365." 852 F.2d at 1184.[19] Before articulating its reasons for reaching that conclusion, the panel also observed that:

> "The evidence supports a finding 'that the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship.' *PCH Associates*, 804 F.2d at 200."

852 F.2d at 1184 (emphasis added). The Moreggia panel then discussed the reasons supporting its conclusion that Section 365 should not apply to the subject lease.

Obviously critical to the recharacterization analysis in Moreggia was the intention of the parties. The parties' intentions also were critical in PCH Associates to determine the true nature of the contract and parol evidence was permitted under Pennsylvania law at trial. 804 F.2d at 193.[20] In Pacific Express, the parties' intent similarly was critical under Texas law and evidence addressing the parties' intent was presented on cross-motions for summary judgment. 780 F.2d at 1485. Before applying its analysis, the Moreggia panel also discussed a trial court decision that recharacterized a "Lease Purchase Contract" as a security agreement based on "the intentions of the parties…and the economic substance of the transaction." 852 F.2d at 1183, citing In re Independence Village, 52 B.R. 715 (Bankr. E.D. Mich. 1985).

In this instance, both the Debtors and the Defendant seek summary judgment without providing any admissible evidence on this critical issue. Curiously, the declaration submitted by the Debtors attests only as to what the Debtors wanted the transaction to be rather than what was agreed by both parties. See Rhodes Declaration at ¶ 8. Moreover, the same declaration attests

---

[19] It appears that the Moreggia panel determined only that the Lease Agreement at issue was not a true lease that is subject to treatment under Section 365, but went no further. Compare PCH Associates, 804 F.2d at 201 ("…we hold that the Ground Lease and Sale-Leaseback Agreement do not constitute a true lease. Therefore, section 365(d)(3), (4) of the Bankruptcy Code has no application here. Whether these contracts create a joint venture, a security agreement, or some other form of investment vehicle need not be decided here."). In other words, the panel did not take the additional step of "recharacterizing" the Lease Agreement as some other form of transaction.

[20] Bankruptcy Judge Lifland conducted a multi-day trial including expert and percipient witness testimony to determine the parties' intent underlying the subject ground lease. See PCH Associates v. Liona Corp. (In re PCH Associates), 55 B.R. 273, 279 (Bankr. S.D. N.Y. 1985).

only as to the declarant's information and belief, rather than personal knowledge, as to the purpose and financial details of the Mining Lease Agreement and Reserves Agreement. Id. at ¶¶ 18, 19, and 20. Although two related individuals executed the Mining Lease Agreement on behalf of the respective Debtors, only one of them submitted a declaration as to the Debtors' purpose. By contrast, the declaration submitted by the Defendant attests that the Debtors were informed that the Defendant was unwilling to structure the transaction as a loan. See Levkulich Declaration at ¶ 5. On this limited evidence, it might be concluded outside of bankruptcy that the parties' principals did not have a meeting of the minds required to form a binding agreement. On this limited evidence, it cannot be concluded inside of bankruptcy that the recharacterization analysis permitted by Moreggia and similar cases can be completed. Compare In re Anchorage Sportsplex, Inc., 462 B.R. 722, 731-32 (Bankr. D. Alaska 2010) (bank challenging the economic substance of a land lease failed to provide any testimony from the principal participants as to their intentions to establish anything other than a lease). These gaps in the relevant testimony from Debtors as well as the Defendant make it unnecessary to even address whether credibility concerns can or should be addressed on summary judgment.[21]

The court is mindful that the Debtors request recharacterization of the Mining Lease Agreement under the equitable powers of the bankruptcy court. The nearest analogue outside of bankruptcy appears to be the reformation of contracts. Both the recharacterization remedy and the reformation remedy are based substantially or entirely on reaching an equitable result that is consistent with the parties' intentions. While Congress has exclusive authority to enact uniform bankruptcy laws and is not prohibited from enacting laws that impair the obligation of contracts, compare U.S.Const., Art. I, §8, cl. 4, with U.S.Const., Art. I, §10, cl. 1, bankruptcy courts should be hesitant to create rights in bankruptcy that are not specifically reflected by substantial

[21] The Mining Lease Agreement and Reserves Agreement apparently were prepared with the assistance of legal counsel, yet there are no declarations from legal counsel that have been offered suggesting the respective clients had intentions not specified in the actual documents.

negotiations between well-represented and sophisticated parties.[22] The intention of the parties is a material fact to the theory of both the Debtors and the Defendant. Neither the Debtors nor the Defendant, however, have met their burden of establishing the absence of a genuine dispute on this threshold factual issue. Because the factual issue is foundational to any recharacterization analysis applicable to the Mining Lease Agreement, summary judgment cannot be granted at this time.[23]

The Strike Motion does not concern evidence that is dispositive of the intention of parties to the Mining Lease Agreement. It is unnecessary to determine whether the evidence can or should be considered in connection with this issue[24] or others at trial or other pretrial stages of this adversary proceeding. Accordingly, the Strike Motion will be denied without prejudice at this time.

## CONCLUSION

Because the instant motions seek summary judgment, no factual determinations are made by the instant order. For the reasons explained, neither of the motions are granted. Likewise, the merits of the Strike Motion need not be addressed.

**IT IS THEREFORE ORDERED** that Debtors' Motion for Summary Judgment on Their Adversary Complaint Against Rep-Clark, LLC, Adversary Docket No. 130, be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED that** the Motion for Summary Judgment, brought by defendant Rep-Clark, LLC, Adversary Docket No. 134, be, and the same hereby is, **DENIED.**

---

[22] Not even the broad language of Section 105(a) gives a bankruptcy court authority to fashion remedies for every seemingly inequitable or disadvantageous result. See Law v. Siegel, 134 S.Ct. 1188, 1197-98 (2014).

[23] As mentioned at note 15, supra, reformation of a contract may be required to conform to the intentions of the parties or to prevent fraud. The Debtors and the Defendant do not suggest that either party engaged in fraud.

[24] In Moreggia, the agreement at issue itself described "the nature of the transaction as 'peculiar.'" 852 F.2d at 1184. Whether the Mining Lease Agreement in the instant case is sufficiently peculiar to warrant consideration of expert witness testimony is not being determined at this time.

**IT IS FURTHER ORDERED that** the Motion to Strike Rep-Clark's Expert Report and Exclude Testimony and Opinions of Rep-Clark's Expert Thomas P. Erwin, brought by plaintiffs Gypsum Resources, LLC, and Gypsum Resources Materials, LLC, Adversary Docket No. 126, be, and the same hereby is, **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Copy sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:

GYPSUM RESOURCES MATERIALS, LLC
ATTN: OFFICER/MANAGING AGENT
8912 SPANISH RIDGE AVENUE, #200
LAS VEGAS, NV 89148

GYPSUM RESOURCES, LLC
8212 SPANISH RIDGE AVENUE
LAS VEGAS, NV 89148

# # #